# OCTOBER TERM, 1847.

## KEAN v. DAVIS.

1. A bill of Exchange signed J. K., President of E. & S. R. R. Co. leaves it ambiguous on the face of it, whether J. K. individually, or the company, is the drawer.

2. In such case, without any explanatory proof, J. K. individually would be considered the drawer of the bill.

3. Where a written instrument is not ambiguous or uncertain on its face, parol proof cannot be resorted to, to shew what was the real intention of the parties. But in cases of ambiguity on the face of the instrument, as in the above bill, it may be introduced to explain which of two doubtful constructions was the intent of the parties; and it may be introduced to show who really intended to sign an instrument, as that an endorsement on the back of a note was intended for a signature as joint maker.

Error to the Supreme Court.

This action was instituted in the Circuit Court of the county of Essex, by the defendants in error, as endorsees of the bills of exchange, against (John Kean) the plaintiff in error, as the drawer of said bills. The bills are alike in tenor and amount, and are each drawn as follows:

$500.00.                                 ELIZABETHTOWN, Sept. 1841.

Six months after date, please pay to the order of the Elizabethtown and Somerville Railroad Company, five hundred dollars, value received, and charge as ordered.

Your obed't serv't,

JOHN KEAN,

*President Elizabethtown and Somerville R. R. Co.*

683

They are addressed to William Thomson, Esq. Somerville, N. J., and by him accepted, and are endorsed, " The Elizabethtown and Somerville Rail Road Company, by John Kean, President."

The plaintiffs on the trial of the cause, proved the drawing, acceptance, and endorsement of the bills, their presentment for payment, and due notice of dishonor to the defendant.

The defendant, by way of defence to the action, offered to prove, that at the date of the bills, John Kean (by whom the bills were signed) was President of the Elizabethtown and Somerville R. R. Co., an incorporated company of the state of New Jersey. That the bills were drawn by the said John Kean, by, and under the direction of the Board of Directors of said company, and in pursuance of authority duly vested in him for that purpose; that the bills were delivered to the plaintiffs by an agent of the company in payment for iron sold and delivered by the plaintiffs to the company. That at the time of the delivery of the bills to the plaintiffs, they were informed that the company were the drawers of the bills. That the bills were intended to be the bills of the Elizabethtown and Somerville R. R. Co., and that the plaintiffs took them as such.

This evidence was objected to and overruled. The court thereupon charged the jury, that the said bills were the bills of John Kean, who was the drawer, and that whether they were drawn by the company or by Kean was a question of law, and was a question of fact for the jury.

The judgment of the Circuit Court having been affirmed by the Supreme Court, (Spenc. 425) the plaintiff in error now seeks a reversal of that judgment.

B. Williamson, for plaintiff in error, cited Taft v. Brewster, 9 John. 334; White v. Skinner, 13 Johns. 307 ; Randall v. Van Vechten, 19 John. 60 ; Mott v. Hicks, 1 Cowen 513, 515; Hill v. Bannester, 8 Cowen, 31 ; Barker v. Ins. Co. 3 Wend. 94 ; Brockway v. Allen, 17 Wend. 40 ; Walker v. Lippett, 4 Mass. 595 ; White v. Westport Co. 1 Pick. 215 ; Mechs. Bank v. Bank of Columbia, 5 Wheat. 326 ; 3 Hill, 393.

Vroom, for defendant in error.

Kean, on the face of these bills, expressly binds himself. There is no more ambiguity on their face, than if he had written "Judge," or "Governor," or any other title after his name. And he has not by any words undertaken to make the company liable. He cited *Appleton* v. *Binks*, 5 *East.* 148; 3 *Barn. & Ald.* 47; 6 *E. C. S. R.* 197; *Taft* v. *Brewster*, 9 *Johns.* 331; 3 *Wend.* 94; *Stone* v. *Wood*, 7 *Cowen* 453; 8 *Cowen* 31; *Story on Agency*, §§ 114, 154, 160, 270, & 288; *Thomson* v. *Davenport*, 2 *Smith L. C.* 224; *Magie* v. *Atkinson*, 2 *M. & W.* 410; 8 *M. & W.* 834; 6 *A. & E.* 486; *Wilson* v. *Hart*, 7 *Taunt.* 295; 1 *Greenl. Ev.* § 294; 1 *Howard* 182.

The CHIEF JUSTICE delivered the opinion of the court.

The leading inquiry in this cause unquestionably is, whose contracts are these? In other words, whose language is the language of these bills? Are they the personal contracts of John Kean, or are they the contracts of the Elizabethtown & Somerville R. R. Co.? For the purposes of legal investigation, this inquiry is resolvable into two, viz:

1. By whom do these bills purport to be drawn?

2. If upon the face of the instruments it is doubtful whose contracts they are, is parol evidence admissible to determine their true character?

I. Upon the face of these instruments, (independent of authorities) it may be safely averred, that it does not clearly appear whether the drawing of the bills was designed as the act of the corporation, or as the act of the individual. This identical form of signature may create an obligation either upon the corporation, or upon the individual, according to the terms made use of in the instrument. A promissory note drawn thus, "*I* promise to pay," &c. and signed by John Kean, "President Elizabethtown & Somerville R. R. Co." has been deemed the note of the individual. *Hill* v. *Bannister*, 8 *Cowen* 31; *Barker* v. *Mechs. Ins. Co.* 3 *Wend.* 94. But if the language of the note be "six months after date," The Elizabethtown & Somerville R. R. Co. "promise to pay," and the note be signed pre-

cisely as before, it would clearly be not the note of the individual, but of the corporation. *Shotwell* v. *McKown*, 2 *South.* 828 ; *Mott* v. *Hicks*, 1 *Cowen* 513.

In the instances above cited, the signature John Kean, "President Elizabethtown & Somerville R. R. Co." has been held to import either an individual or a corporate obligation, according to the phraseology of the instrument itself.

There is nothing in the body of the present instruments to determine the character of the obligation, or the true import of the signature ; nothing to aid in the solution of the question, who is the real drawer of the bills ?

In many of the cases cited and relied upon, as establishing the doctrine that a signature like the present, binds the individual and not the corporation, it will be found that there is something in the phraseology of the instrument itself, independent of the mere form of the signature, importing the personal obligation of the agent. There is either an entire omission to name the principal, or the language of the instrument will be found to import a personal and not a corporate obligation. In some cases, this circumstance seems to have had a controlling influence upon the opinion. *Hovey* v. *Magill*, 2 *Cowen* 685 ; *Barker* v. *Mechs. Ins. Co.*, 3 *Wend.* 98.

Yet even in such cases, it is by no means clearly settled that the obligation is upon the agent and not upon the principal, although such seems to be the better opinion. " If the note," (says Justice Story,) " had been I, A. B. President of the corporation, (naming it) promise to pay," &c. it would, *it seems*, have been deemed the personal note of A. B., and not of the corporation. And he adds : " It is not easy to reconcile all the cases in the books upon this subject, although I cannot but think that the true principle to be deduced from them is that stated in the text." *Story on Agencies* 186, § 154, *note* 3 ; *Story on Prom. Notes* 71, § 69, *note* 3.

Thus uncertain is the rule of construction adopted by judicial tribunals, of the effect of a signature like that now under consideration. And if the present obligation is to be deemed *prima facie*, as creating a personal obligation upon the agent and not upon his principal, it is clearly a construction in aid of

the holder of the paper, founded upon principles of policy or necessity, but resting upon no clearly expressed intent of the party. It is at best, upon the face of the instruments, doubtful by whom they were executed. It is not clear who was the contracting party, whether the obligation was assumed by the agent, or whether he contracted on behalf of his principal.

II. May extrinsic evidence be resorted to, to remove this doubt? Is parol evidence admissible to shew by whom this contract was in fact made? Whether it is the contract of the agent, or the contract of the principal?

If this were a verbal and not a written contract, it is not questioned that the evidence offered is both pertinent and competent to discharge the agent, and fix the liability upon the principal. The objection urged to the evidence is, that the contract is in writing; that the construction of a written agreement is matter of law, to be settled by the court upon the terms of the instrument itself; and that evidence *aliunde*, cannot be received to contradict or to vary the terms of a valid written instrument.

It is material to observe, that the *body* of this instrument contains not a word indicating by whom the contract was made. The language of the instrument is equally applicable to a contract made by the individual, or by the corporation. It cannot be said that this evidence will either contradict or vary the terms of the instrument. The whole difficulty lies not in the construction of the instrument; but in the import of the signature. That signature, as we have seen, may import either the act of the company, or of the individual. The terms of the instrument are neither varied, nor contradicted by proof that it was the contract of the one, or of the other.

The question is not what is the true construction of the language of the contracting party but who is the contracting party? whose language is it? And the evidence is not adduced to discharge the agent from a personal liability which he has assumed, but to prove that in fact he never incurred that liability. Not to aid in the construction of the instrument, but to prove whose instrument it is.

Now it is true that the construction of a written contract is a

question of law, to be settled by the court upon the terms of the instrument. But whether the contract was in point of fact executed, when it was made, where it was made, upon what consideration it was made, and by whom it was made, are questions of fact to be settled by a jury, and are provable in many instances by parol, though even the proof conflicts with the language of the instrument itself.

Thus it may be shewn that the contract in fact was made at a different place, at another time, and upon other considerations, than those stated upon its face. So if an instrument purports to be executed by A. & B., it may be shewn by parol, that it was executed by A. alone, and that B. signed it merely as a witness, or for some other purpose. So it may be shewn that a note purporting to be drawn by A, and endorsed by B, is in fact the joint note of A. & B.

So where (in cases like the present) an individual, upon the face of the instrument, is deemed *prima facie* to have subscribed it as a contracting party, it has been held competent for him to prove that he signed it as an agent, or as a witness, or for some other lawful purpose.

In *Brockway* v. *Allen*, 17 *Wend.* 40, the action was upon a promissory note signed by the defendants, adding to their signatures "Trustees of the First Baptist Society of Brockport." It was held by the court upon demurrer, that the defendants, *prima facie*, were personally liable, but that such presumption of liability might be rebutted by proof that the note was in fact given by the makers as agents of a corporation, for a debt due from the corporation to the payee, and that they were duly authorized to make such note as the agents of the corporation.

In *Palmer* v. *Stevens*, 1 *Davies* 471, the action was brought upon a promissory note in these words : "On demand for value received, we promise to Nathaniel Palmer one thousand dollars on interest.          Signed          G. STEVENS,
                                                                 W. G. S."

The plaintiff proved that the note and the signatures were all in the hand writing of William G. Stevens, (the defendant,) whose initials (W. G. S.) were signed to the note. The defence was that the note was given as the note of G. Stevens &

Sons, who alone were liable, and that it was signed by the defendant as their clerk—his initials having been appended simply to indicate that he signed it. Evidence in support of this defence having been offered, a verdict was rendered for the defendant.

Upon a motion for a new trial, the court, in delivering their opinion, say : " If the defendant, by placing his initials under the name of G. Stevens, intended to bind himself as a maker of the note, there can be no doubt of his liability in that character, and this was a point to be considered and decided by a jury. But the initials might have been written, and so might the full name, to attest the execution of the note by the one who was maker, or to indicate that the one who wrote the initials had, as agent of the person whose name appeared as maker, executed the note for him, and in his name. These are supposable cases, but they present questions on which the jury should have passed."

In *Mann* v. *Chandler*, 9 *Mass.* 335, the action was brought by the payee against the maker of three promissory notes, in the following form : " I, the subscriber, Treasurer of the Dorchester Turnpike Corporation, promise, &c." Signed—Gardner L. Chandler, Treasurer of the Dorchester Turnpike Corporation. It was argued on the trial that the notes were given for a debt due from the corporation to the payee, and that the treasurer had been authorized and requested to settle with the creditors by note or otherwise. Judgment was rendered for the defendant. Here, say the court, it cannot be doubted the corporation is itself liable. The consideration moved wholly from them. It is very apparent that the plaintiff did not at the time of receiving the notes, look to the defendant's personal security. The whole transaction was on behalf of the corporation. This decision is entitled to less weight from the fact that no objection was made to the admissibility of the evidence, but proceeding from so distinguished a jurist as Chief Justice Parsons, it is entitled to respectful consideration.

In *Lazarus* v. *Shearer*, 2 *Ala. Rep.* (new series) 718, the action was by the payee against the acceptor of a bill of exchange, addressed to and accepted by Gilbert Shearer, President of the

Selma & Tennessee Rail Road Co. The plea was the general issue. On the trial, the plaintiff having offered in evidence the bill of exchange with the acceptance thereon, the defendant proposed to prove that the bill was drawn for a debt which the company owed the drawer; and that the holder of the bill at the time the same was drawn, was fully apprised by the drawer that it was intended to be drawn upon the defendant, as President of the Co., and not in his private capacity. The evidence was objected to, but admitted, and a verdict rendered for the defendant. Upon a writ of error the Supreme Court, after an elaborate argument upon this point, sustain the ruling of the judge at the trial.

"It is necessary," (says the learned Chief Justice, in pronouncing the opinion of the court,) "in order to make a contract, *per se*, (by which I understand him to mean independent of parol evidence) binding upon the principal, that it should appear to have been made in the name of the principal. A mere addition to the name of, the party signing a contract cannot be regarded as a certain indication that it was made on the behalf and account of another. Where, however, it is doubtful from the face of the contract, whether it was intended to operate as the personal engagement of the party signing it, or to impose an obligation upon some third person, as his principal, parol evidence is admissible to shew the true character of the transaction."

This I deem to be sound law, and directly applicable to the present case.

In *The Mechs. Bank* v. *The Bank of Columbia*, 5 *Wheat.* 326, Justice Johnson, in delivering the opinion of the court, says: "The question is, whether a certain act done by the cashier of a Bank, was done in his official or individual capacity. Had the draft drawn by Paton borne no marks of an official character upon the face of it, the case would have presented more difficulty. But if marks of an official character not only exist on the face, but predominate, the case is really a very familiar one. Evidence to fix its true character becomes indispensable. It is enough for the purposes of the defendant to establish that there existed on the face of the paper circumstances from which it

might reasonably be inferred that it was either the one or the other. In that case it becomes indispensable to resort to extrinsic evidence to remove the doubt."

There is a distinct recognition of the principle that where it is doubtful upon the face of a written instrument, by whom it was executed, parol evidence is admissible to determine its true character.

A much broader doctrine has been deduced from the case last cited, than the case itself will warrant. It seems to have been supposed on the argument here, and in several other instances in which that case has been cited and commented on, that the action was brought upon the check. It is so stated in the report itself. But the fact is otherwise. The check was drawn by Wm. Paton, Jr. (the cashier of The Mechanics' Bank, upon the Bank of Columbia.) It was paid by the drawer. The action was brought by the Bank of Columbia, (the drawer) against The Mechanics' Bank, but not as drawers of the check. No such action could have been maintained even against Paton himself—much less against the Bank. The declaration contained only the common money counts. The contract arising out of the payment of a check, is a contract for money advanced, and must be so declared on. It was in truth an action for money paid by the plaintiff for the defendant. Upon the trial it was proved that the check was appropriated to pay a debt due from the Mechanics' Bank to the U. S. Bank. The material question before the court was not who was the drawer of the check, but whether the money drawn upon it was in fact paid by the plaintiffs for the defendants. Viewed in this aspect, the case is in entire accordance with well settled principles, and accords with the case of *Penty* v. *Stanton,* with which it has been supposed directly to conflict.

If in the present instance, these bills had been paid by the drawee, (Thomson,) can it be doubted that he could have maintained an action against the Railroad Company for money paid for their use? And would it not have been perfectly immaterial by whom the drafts had been signed? If upon the trial he had shewn that the money paid upon the bills was paid by him for iron purchased for, and used by the company, would he not

be entitled to recover? And would it not be perfectly immaterial to his right of action, whether the bills were drawn by the company, or by Kean individually. In truth, the action in such case would not have been upon the bills, but upon the implied assumpsit arising upon the payment of the money. And this seems to have been the only point necessarily involved in the case of *The Mechanics' Bank* v. *The Bank of Columbia.*

The cases which have been cited we think fully establish the principle that where it is doubtful upon the face of the instrument, whether it was designed to operate as the personal engagement of the party signing it, or otherwise, parol evidence is admissible to shew the true character of the transaction.

Nor do I apprehend that this doctrine is any wise in conflict with the leading cases cited and relied on by the counsel of the defendant in error. In most, if not in all the cases where parol evidence has been rejected, it will be found that the contract was clearly in the name of the agent, and not of the principal. The evidence was offered not to shew who was in truth the contracting party, but to relieve the party contracting from the effect of an obligation which he had clearly assumed, by proof that, at the time of the contract, he was acting as agent. This seems to me to be the extent of the doctrine contained in *Leadbitter* v. *Farron*, 2 *Maule & Sel.* 345 ; *Jones* v. *Settledale*, 6 *Ad. & Ellis* 486 ; *Higgins* v. *Senior*, 8 *Mees. & W.* 834 ; *Magee* v. *Atkinson, et al.* 2 *J. C.* 440 ; *Penty* v. *Stanton*, 10 *Wend.* 271 ; *Stackpole* v. *Arnold*, 11 *Mass.* 27.

In *Leadbitter* v. *Farron*, Ellenborough, C. J. says, giving full effect to the circumstances, the plaintiff knew the defendant to be agent, still the defendant is liable, like any other drawer, who puts his name to a bill without denoting that he does it in the character of a procurator. The defendant has not so done, and therefore has made himself liable. " The party," says Abbott, J. " does not shew that the bill was not taken according to the effect which it bears on the face of it. In *Magee* v. *Atkinson et al.* the judge told the jury that if the defendants entered into a written contract in their own names, they could not afterwards set up that they were acting as brokers merely, and although known to be agents of the defendants, signed the

Kean v. Davis.

contract in their own names, they were liable." In *Stackpole* v. *Arnold*, Parker, J. said a new trial is moved for, because no evidence ought to have been admitted to change the nature and effect of the contracts as they appear on the face of them, they being perfectly intelligible and unambiguous, without extrinsic evidence to alter their tendency and operation.

Indeed no case was cited upon the argument, which would warrant the rejection of the evidence offered in the present cases.

Upon the whole, I am of opinion that although these bills unexplained, would be deemed *prima facie* to be the individual bills of John Kean, yet inasmuch as it is doubtful upon their face what was the intention of the contracting parties, and who are the real drawers, inasmuch as the name of the principal appears upon the face of the instruments, and an action may be maintained thereon against the principal; and inasmuch as the evidence offered in nowise contradicts the language of the instrument itself, I am of opinion that the evidence offered and rejected in the court below was competent, and that the court erred in overruling it.

In arriving at this conclusion, I do in nowise dissent from many of the legal positions contained in the opinion of the court below. On the contrary, I yield to them my entire concurrence, sustained as they are by much learning and great weight of authority. I have no wish or purpose to say aught tending to shake the stability or to violate the sacredness of written contracts. But where upon the face of the instrument, it is doubtful who is the contracting party, both reason and authority authorize the production of extrinsic evidence to remove that doubt.

Let the judgment be reversed, and the record be remitted with directions to award a *venire de novo*.

The Court, (the CHANCELLOR, CHIEF JUSTICE, PORTER, ROBERTSON, SCHENCK, SPENCER, SPEER and SINNICKSON,) unanimously reversed the judgment of the Supreme Court.

*Note.*—A very recent publication, issued since the foregoing opinion was prepared, will be found to contain a collection of the authorities upon the point involved in the present case. In a note to *Pentz* v. *Stanton*, 1 *Am. L. Cas.* 453, the result of the authorities is thus stated: "In cases of this kind where there is a doubt or ambiguity on the face of the instrument, as to whether the person meant to bind himself or only to give an evidence of debt against an institution or body of which he is a representative, parol evidence is undoubtedly admissible, not indeed to show the intention of the parties to the contract, but to prove extrinsic circumstances by which the respective liability of the principal and agent may be determined; such as to which the consideration passed and credit was given; and whether the agent had authority; and whether it was known to the party that he acted as agent. But if the name of the principal does not appear in the instrument, and the instrument is without ambiguity, and asserts a positive liability on the part of the person contracting, parol evidence to bind the principal or to discharge the agent is not admissible."

CITED *in Apgar's Adm'rs* v. *Hiler*, 4 *Zab.* 813; *Maddock* v. *Vanness*, 6 *Vr.* 523.