THE STATE, JAMES BRAHN, PROSECUTOR, v. THE JERSEY CITY FORGE COMPANY.

1. What constitutes a sufficient affidavit in a summary proceeding before a justice of the peace, under the act concerning landlord and tenant.

2. If a tenant enters into possession of premises under a parol lease made by the attorney of a corporation, the tenant will not be permitted to dispute the agent's authority, if the company subsequently ratifies the agent's act.

3. An agent who demands possession for his principal, must have authority to make the demand at the time of making it. A subsequent assent on the part of the landlord will not establish, by relation, a notice given, in the first instance, without authority.

4. It is not necessary to prove an express authority to the agent; it may be inferred from circumstances which show the concurrence of the principal in his act.

5. It is not necessary to show the tenant by proof, at the time of the service, that the agent had due authority; it is sufficient if such authority actually exists.

6. The act concerning landlord and tenant makes no provision for admitting other parties to defend.

On *certiorari*.

Argued at February Term, 1875, before Justices WOODHULL, VAN SYCKEL and SCUDDER.

For the plaintiff, *Lewis*.

For the defendant, *Brinkerhoff*.

The opinion of the court was delivered by

VAN SYCKEL, J. The proceedings to be reviewed in this case were had under the act concerning landlord and

tenant, and the only question is whether the justice had jurisdiction.

The plaintiff below aimed to establish a case of holding over after tenancy ended, and demand made and notice given according to the statute.

It was essential to the justice's jurisdiction to show—

1. That the relation of landlord and tenant existed between the parties.

2. That the tenant's term had expired, and that he held over.

3. That the landlord, or his agent, had made demand and given notice, in writing, to the tenant, to deliver up the possession.

The affidavit upon which the summons was issued was made October 22d, 1874, by Yale, the president of the Jersey City Forge Company. It describes the property, and sets forth, that the company let and rented the premises to Brahn on the 14th day of July, 1874, for the term of twenty-four days from July 13th, at the rent of $250 ; that Brahn entered into the possession of said premises by virtue of said agreement ; that his term had expired, and that he held over and continued in possession, without permission from the company, and that, on the 18th of October, 1874, the company had made demand and given notice in writing to Brahn to deliver up the possession, which notice was served by deponent on the said Brahn, personally.

These jurisdictional facts are as fully set forth in this affidavit, as is required by the case of *Fowler* v. *Roe*, 1 *Dutcher* 549.

It is objected, in the first place, that this affidavit was hearsay, and was not legal proof of the letting. It is the affidavit of the president of the company, who swears to facts, not to conclusions, of law, which, if true, unquestionably establish the relation of landlord and tenant. It is not necessary that the affidavit should set forth how the affiant obtained his knowledge of these facts ; whether it was by the admission of the tenant made to him, or by being present

when the verbal lease was entered into, is wholly immaterial. The evidence on the trial before the justice shows, that the lease was by parol, and was made by the attorney of the company to Brahn.

It is now insisted, on behalf of the prosecutor, that the relation of landlord and tenant did not exist between the parties, because the president of the company had no power to let the premises without special authority from the board of directors, and, if such authority had been shown, the president could not delegate his power to the attorney. If the prosecutor was seeking to enforce the terms of a parol lease against the company, the latter could set up, in defence, a want of authority on the part of the person who assumed to bind them, but the tenant, after having entered into a lease with the company through their ostensible agent or attorney, having entered into possession and enjoyed the full term under it, cannot say to the company, when they institute proceedings to recover their possession, I am not your tenant, because it does not appear that you authorized your agent, in strict legal form, to lease to me. If the contract was without authority, and the company subsequently adopted it, the tenant cannot, after receiving the benefit of it, repudiate it. The company ratified the agreement by permitting the tenant to enter and occupy under it, by receiving a portion of the rent, and by bringing these proceedings to recover possession. If there could be any difficulty in this respect, it is obviated by the evidence of the tenant himself, who testified, before the justice, that he leased the premises in question from the company in July last. So long as the company is willing to recognize the validity of the agent's act, it is incompetent for the tenant to controvert it.

The demand of possession was in writing, signed " The Jersey City Forge Company, by B. Buchanan Yale, Pres't," and service thereof was acknowledged by Brahn in writing. The sufficiency of this demand is denied, on the ground that it does not appear affirmatively that it was a demand by the landlord or his lawfully authorized agent. The act author-

izing this summary proceeding preserves the rule of the common law that the notice to quit must be given by the landlord personally, or by his duly appointed agent. If by the agent, it must appear that he is clothed with power to give the notice at the time it was given. Ordinarily, a subsequent ratification of an agent's act by the principal will be sufficient, but between landlord and tenant the rule with regard to the notice differs from that which governs between principal and agent as to other transactions. A subsequent assent on the part of the landlord will not establish by relation a notice given in the first instance without his authority. The reason is, that the tenant must act upon the notice at the time it is given; and it must, therefore, at that time, be such a notice as he can act upon with security, and if authority by relation were sufficient, the tenant would be subjected to the injustice of being left in doubt as to his action until the ratification or disavowal of the principal. *Roe* v. *Pierce,* 2 *Camp.* 96, and *Goodtitle* v. *Woodward,* 3 *B. & Ald.* 689, hold the contrary doctrine, but the weight of authority is in favor of the rule as I have stated it.

Judge Story, in his work on *Agency,* § 246, says that if the act done by the agent would, if authorized, create a right to have some act or duty performed by a third person, so as to subject him to damages or losses, for the non-performance of that act or duty, or would defeat a right or estate already vested in the latter, there the subsequent ratification or adoption of the unauthorized act by the principal, will not give validity to it, so as to bind such third person to its consequences; and within this rule he instances the case of a notice to quit given by an unauthorized person for the landlord, subsequently ratified by the latter.

In *Right* v. *Cuttrell,* 5 *East.* 491, the notice was signed by only two of three joint tenants, under whom the defendant held, purporting, however, to be given on behalf of themselves and the other, who subsequently joined in the action of ejectment. Lord Ellenborough held that the subsequent adoption of the notice did not validate it, for the reason that

the tenant was entitled to such a notice as he could act upon with certainty at the time he received it, and that he should not be put to the hazard of its subsequent ratification. This case was cited and approved by Justice Parke, in *Doe* v. *Walton*, 10 *Barn. & Cress.* 625, and by Lord Denman in *Doe* v. *Goldwin*, 2 *Q. B.* 143, and has been adopted by the text writers as the true rule upon this subject. *Adams' Ejectment* 127 ; *Tyler's Ejectment* 227.

The mere fact, therefore, that the company adopted the act of its agent by instituting these proceedings, based upon the legality of the demand for possession, is not, of itself, sufficient to justify the implication that the agent had the requisite authority at the time he served the notice.

The fact that Yale was president of the forge company would not justify, of itself, the inference that he had authority to lease the company's lands, and terminate the lease by notice. But it is not necessary to prove an express authority ; it may be presumed from circumstances which show the concurrence of the principal in his acts. In this case it appears that Yale, with the sanction of the company, had let these premises in 1873 to Emley ; that Emley had surrendered possession to Yale in July, 1874, and that, thereupon, the attorney of the company, by the direction of Yale, leased to Brahn, the defendant below. The acquiescence in these acts by the company shows the course of employment of the president. The demand of possession was served upon the defendant by the attorney who made the lease to him, by the direction and in the presence of the president, after the term of the defendant had expired.

From these circumstances, in connection with the fact that the company subsequently adopted the acts of its officer, by instituting this suit, the court below was justified in finding, as matter of fact, that the agent was duly authorized at the time he served the demand. The notice was signed by the president on behalf of the company, and was served in such a way as to give a reasonable assurance to the defendant that he could safely act upon it.

While the tenant cannot be compelled to act upon an insufficient notice, or be subjected to loss by declining to do so, it is not necessary to demonstrate to him by proof at the time of the service, that the agent is fully authorized to act. The consequences of such a rule would be very inconvenient. Wherever a person acts by an agent, the person on whom he acts disputes or acquiesces in the authority at his peril. If he disputes it, and it turns out to be valid, he is bound by it. He must inquire, if he has any doubt, and may have recourse to the principal; he cannot compel the production, or proof of the agent's authority. The only question now is, was the act done by the principal at a certain time? That the serving of this demand was the act of the principal, I think is sufficiently established by the circumstances proved in this case.

The objection that there was no proof that the president of the company was authorized to make the affidavit upon which the justice issued his process, cannot prevail. That is within the general rule which pertains between principal and agent under which authority, to the agent may be presumed from subsequent ratification.

If, as the prosecutor insists, a corporation could not institute and maintain its suit without, in the first instance, showing, appropriately, that it was authorized by the board of directors, this objection might be tenable. But that has never been held to be the law; an action in the name of a corporation is presumed to be by its authority, until the contrary appears, in which event it will be dismissed. After possession had been demanded on behalf of the company, Yale made his affidavit, in which he stated that he was president of the company, and stated all the facts necessary to give the justice jurisdiction, whereupon the company prosecuted its suit, recognizing this act as its own.

From these circumstances, in the absence of any evidence to show that the company had disavowed the agency, its existence must be inferred, and it must be presumed that the president was acting within the scope of his employment.

So far as Brahn is concerned, every fact essential to give the justice jurisdiction, was sufficiently shown.

A further reason assigned for reversal is, that one Samuel C. Emley and The Jersey City Iron Works were in the actual possession of the demised premises, and that the justice refused to allow them to be heard. The defendant did not ask that they should be heard; they came before the justice and applied to defend on their own behalf. The only evidence to show that these parties were ever in possession is, that of Brinkerhoff, who testified that Emley was the tenant previous to Brahn, and that on the 14th of June, 1874, Emley said he was in possession, and that The Jersey City Iron Works were holding the premises under him. As to the last named company, this was merely hearsay, and was no proof that they had ever been in possession.

If Emley had been in possession in June, he had abandoned it before the lease to Brahn, as appears by an acknowledgment in evidence under his hand and seal, dated July 13th, 1874, by which he declared that he had given up the possession and control of the premises to Yale, the president of the company, plaintiff, and that he was no longer in possession.

Whether it was competent for Emley or The Jersey City Iron Works, who were not parties to the suit, to come in as defendants and prove, before the justice, that at the time the proceedings were instituted, they were actually in possession of the premises, is a question which has not been adjudged in this state. The act makes no provision for admitting other parties to defend, and there is nothing in the statute which, by implication, would seem to justify such a practice. It is apparent, that by collusion, persons in the lawful possession of premises might be evicted without an opportunity of being heard. In ejectment, if a tenant who was in possession anterior to the commencement of the suit, is removed by writ of possession, the court has power to restore him by writ of restitution. A justice of the peace has no such control over his process. The sixth section of

Brahn v. Jersey City Forge Co.

the act under which these proceedings were had, directs that he shall issue his warrant to the constable, commanding him to remove all persons from the premises. Under this writ, parties who had not been summoned or heard, might be ejected, in which contingency, the only remedy provided by the act, is an action of trespass against the landlord.

If this summary remedy is susceptible of such abuse, the legislature may be appealed to for relief. By the revision of March 27th, 1874, the Circuit Court can exercise a salutary control over this proceeding, by taking exclusive cognizance of the case on the application of either party, after a summons has been issued by the justice. Such power is given to the Circuit Court as will enable it to control the writ of possession, so that no injustice will be done.

In this case, there is nothing to induce me to believe that any injustice has been done. Emley is president of the Iron Works; he leased the premises of Yale, president of the Forge Company, by a written lease. Failing to pay his rent, he was served with notice to quit, and thereupon, as appears by his written agreement, he surrendered the premises to Yale, and agreed, as president of the Iron Works, to pay Brahn's rent, so long as he should occupy the works. The writ of *certiorari*, in this case, is prosecuted by Emley and the company of which he is president, in the name of Brahn, but without his authority so far as appears in the case, and in my opinion, should be dismissed, with costs.

Justices WOODHULL and SCUDDER concurred.