ROBERTS ELECTRIC, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FOUNDATIONS & EXCAVATIONS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 2, 1950—Decided October 23, 1950.

*Mr. W. Thomas McGann* argued the cause for the appellant.

*Mr. Martin F. McKernan* argued the cause for the respondent (*Mr. Raymond J. Osborn,* attorney).

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal from the judgment of the Appellate Division of the Superior Court unanimously affirming a judgment entered in the Law Division of that court in favor of the plaintiff for $1,737.32 for work done as an electrical subcontractor of the defendant. Inasmuch as the defendant's right to appeal hinges on the conduct of the trial judge rather than on the subject matter of the suit, it is unnecessary to state the issues or to summarize the evidence, or to deal with the other questions raised on this appeal.

In the course of the trial several remarks were made by the court which the defendant contends were so prejudicial to its case as to deny it a fair trial. The first incident occurred when Thomas J. Hosey, the president of the plaintiff corporation, was testifying. Asked the date on which the contract was entered into, he replied March 17, 1948, which called from the court the comment, "That is St. Patrick's Day," with which the witness agreed. Shortly thereafter, while the same witness was on the stand and counsel were arguing an objection that had been made, the court observed, "This is not St. Patrick's Day." At one time when James E. Foley, the president of the defendant corporation, was testifying, the judge in an aside observed, "Foley, is that Foley as in Foley Square?" This question does not appear in the official transcript of the proceedings of the trial but was testified to at a supplemental hearing prior to this appeal. At another time the court referred to the defendant corporation as "the Foley corporation." These remarks directed indiscriminately at the plaintiff and at the defendant seem quite harmless and we are sure that they could not have prejudiced either party, albeit they offend Canon 10 of Judicial Ethics enjoining the judge to be courteous to counsel and Canon 15 with reference to avoiding controversies that are apt to obscure the merits of the dispute between litigants and lead to its unwise disposition. The quotation in the preface to the Canons of Judicial Ethics from Lord Bacon's *Essay on Judicature,* "An over speaking judge is no well-tuned cymbal" is not without its applicability here. When a witness for the defendant was being examined and the plaintiff's attorney objected to a particular question as being leading, the court said, "It is leading, but I suppose it would take quite a time to get the witness to understand what the inquiry is about." This particular remark, the defendant now contends, cast an aspersion on the intelligence of the defendant's witness, but it would seem to be the kind of innocuous comment which is frequently made when a leading question is permitted to speed the trial.

When the defendant's attorney was putting in evidence a bill from the Public Service Interstate Transportation Company for $2.54, the court is said to have remarked, "Does anybody have $2.54 that they can give to Mr. McGann so that we can get this matter over?" The final incident which the defendant considers objectionable is an admonition made by the court while counsel for the defendant was summing up to the jury to "Stop kissing the jury." These two remarks do not appear in the official transcript of the trial but they were testified to in the supplemental hearing. Defendant now contends that the court's rebuke compelled its counsel to discontinue his explanation of the exhibits to the jury and that all of these incidents collectively had the effect of ridiculing and belittling the defendant's case and of prejudicing it with the jury. No objection was taken, however, to any of the remarks of the court, no motion was made for a mistrial, nor was there any request from the defendant that the court charge the jury to disregard his remarks.

██ The first point argued by the defendant is that the trial court in preventing counsel for the defendant from arguing fully to the jury the force and effect of the exhibits in the case denied the defendant the due process of law guaranteed by the Federal Constitution. This constitutional question, it should be noted, is the defendant's sole basis for appealing to this Court, *Const., Article VI, section V, paragraph* 1(a). It is therefore significant to observe that the question was not raised either at the trial, on the motion for a new trial or before the Appellate Division, but is presented here for the first time. Our appellate courts are not bound to consider questions not raised below, even though they be constitutional questions, *State ex rel. Wm. Eckelmann, Inc., v. Jones,* 4 *N. J.* 207, rehearing denied, 4 *N. J.* 374 (*Sup. Ct.* 1950); *Mahnken v. Meltz,* 97 *N. J. L.* 159 (*E. & A.* 1922); *Borough of Park Ridge v. Reynolds,* 74 *N. J. L.* 449 (*E. & A.* 1907). If we follow precedent and refuse to consider the constitutional question now tardily raised, it follows that the defendant's entire appeal must fail for want of any

right to come here. In this connection it should be pointed out, moreover, that the defendant has failed to comply with *Rule* 1:3–2(c):

"A statement of the questions involved, setting forth each question separately, in the briefest and most general terms, without names, dates, amounts or particulars of any kind. The entire statement should not ordinarily exceed 20 lines, must never exceed one page, and must be printed on a page by itself without any other matter appearing thereon. *If the questions involved include any not presented to the court below, this fact shall be noted. The foregoing requirements are to be considered in the highest degree mandatory, admitting of no exception;* ordinarily no point will be considered which is not set forth in or necessarily suggested by the statement of questions involved." (Italics supplied for purposes of this opinion.)

This is the only rule of court containing such strong language, but the necessity therefor is obvious. It is essential that the appellate courts in studying the briefs know at the outset the questions involved in order to determine what facts in the case are pertinent to the issues raised by counsel. It is especially important to know if any new issues are being raised for the first time in the reviewing court, for ordinarily only matters of jurisdiction or of public policy will be considered for the first time on appeal, *State ex rel. Wm. Eckelmann, Inc., v. Jones, supra,* at *page* 379; *Anderson v. Modica,* 4 *N. J.* 383, 390 *(Sup. Ct.* 1950). In some jurisdictions it has been found necessary to dismiss numerous appeals that did not conform to the Rule in order to enforce compliance with it, but fortunately we have not found it necessary so to do.

 While it is well recognized that the parties have the right to have their counsel sum up the case to the jury, it is also well established that the trial court has the authority as well as the duty to keep the arguments of counsel as well as their conduct and actions within the limits of courtroom decorum. Counsel for the defendant testified at the supplemental hearing and insisted at the oral argument before us that all that he was doing at the time the trial court rebuked him with the admonition "Stop kissing the jury," was to explain certain exhibits to the jury and that in doing so both

he and the jury had to be in a position to read them together, which meant that he was actually facing the court at the time he was interrupted by the court's remarks and therefore that he could not have been "kissing the jury." Counsel took the admonition of the court as a command to desist from the kind of argument he was then making to the jury, *i. e.*, an explanation of the exhibits in the case. There is no justification for this interpretation of the court's remarks for obviously what the court was directing counsel's attention to was the manner of his argument and not its substance. There was, however, some evidence adduced at the supplemental hearing indicating that counsel for the defendant was pacing up and down before the jury box, leaning over the rail, holding out exhibits to the jurors and pointing out things to individual jurors. Whether or not his conduct was objectionable we need not determine, for the questioned language of the court does not appear in the official transcript and the testimony adduced at the supplemental hearing is, as we have seen, conflicting. Counsel had it within his power to protect his client and himself by a timely objection stating explicitly and succinctly the grounds of his protest at the interruption of the trial court. He could also have moved for a mistrial and in the course of so doing spread on the record not only his objection to the remarks of the court in the course of his summation but also his objections to the earlier observations of the court in the course of the trial. Finally, he could have requested the court to charge the jury to disregard his remarks. Counsel did none of these things, though he had the right, and it may well be the duty, to do them all.

In the absence of a timely objection or of a motion for a mistrial, or of a request for instructions, there is no legal error before us on which to ground an appeal, however we may feel about the propriety of the court's direction to counsel, *Rule* 3:46; *Raab v. American Casualty Company,* 4 *N. J.* 303 (*Sup. Ct.* 1950); *Anderson v. Modica, supra,* 4 *N. J.* 383. The rule is not technical, but on the contrary it is essential to an orderly trial. The court or the adverse

party, as the case may be, must be given an opportunity to answer whatever is considered objectionable at the only time that it can be satisfactorily answered, *i. e.,* at the moment when the alleged error is committed. It would be intolerable to permit either party to speculate on the outcome of the submission of the case to the jury and then in the event of an adverse verdict to allege an error that had not been called to the attention of the trial court or of the opposing counsel promptly. The object of an appeal is not to retry a case but to correct errors properly noted below.

It remains for us to consider the situation arising from the fact that some of the remarks of the trial court complained of here do not appear in the official transcript. They make their appearance only in the supplemental hearing held nearly five months after the trial and then, as we have seen and as might well have been expected, through the mere lapse of time there was a general disagreement between the testimony of the president of the defendant corporation and its counsel and the evidence of the president of the plaintiff corporation and its counsel. Quite naturally neither the sergeant-at-arms nor the certified shorthand reporter had any recollection of the questioned events. But the statement of the certified shorthand reporter that she had been told by the judge not to make a record of such remarks demands our attention, for none of us in this Court have ever before known of a trial judge censoring the record of a case tried by him. It is, of course, highly improper for a judge to give instructions to the court reporter not to take any of his remarks and it is equally improper for the reporter to fail to take shorthand notes and to reproduce in the transcript everything the court said during the course of the trial. The trial judge is necessarily allowed wide latitude in the conduct of a trial consistent with established judicial practice, but this discretion does not extend to interfering at any point with the taking of a complete and accurate record of the proceedings.

For want of a constitutional question properly raised the appeal is dismissed but without costs.

*For dismissal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*Opposed*—None.