65 N.J. Super. 223 (1961)
167 A.2d 414
VINELAND SHOPPING CENTER, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS DeMARCO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1961.
Decided January 24, 1961.
*225 Before Judges CONFORD, FREUND and KILKENNY.
Mr. C. Zachary Seltzer argued the cause for appellant (Messrs. Lipman and Casella, attorneys).
Mr. Thomas K.J. Tuso argued the cause for respondent (Mr. Joseph Tuso, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
Defendant appeals from a dispossess judgment granted by the Cumberland County District Court. Such judgments are not appealable "except on the ground of lack of jurisdiction." N.J.S. 2A:18-59; Davidson v. Burstein, 10 N.J. Super. 91 (App. Div. 1950). Therefore, although defendant has improperly briefed matters going to the merits, we shall limit our review to jurisdictional questions.
The record fairly discloses the following facts. The defendant was a lessee of store premises at 26 W. Landis *226 Avenue, Vineland, N.J., under a written lease dated March 25, 1957, providing for a five-year term commencing June 15, 1957, with a monthly rent of $225 payable on the 15th day of each month. Thereafter, the lessors, Robert Houck and Doris Houck, sold the premises to Seaboard Developers, Inc., which in turn transferred title and assigned the lease to plaintiff on or about May 17, 1960.
On June 10, 1960 the defendant was served with a written notice, addressed to him, terminating his tenancy in the subject premises, and demanding that he remove from the premises and deliver up possession to the landlord within three days from the service of this notice. The notice was signed: "By Sidney L. Brody, Sec., Vineland Shopping Center, Inc." It specified six alleged violations of the terms of the lease, the first of which charged that the defendant did "fail to pay sewer charges as agreed in paragraph 3 of said lease." The lease gives the landlord the right to terminate it and retake possession upon default for 30 days in any covenant or condition to be performed by the tenant.
The defendant did not vacate as demanded and a dispossess suit was filed on June 20, 1960. The defendant filed a formal answer with three separate defenses, and included a counterclaim for damages, and demand for jury trial. On plaintiff's motion the third separate defense and counterclaim were ordered stricken. There is no appeal from that order. Also, on July 14, 1960 plaintiff moved for summary judgment on two of the six alleged violations, namely (a) failure to pay sewerage charges; and (b) failure to pay increased taxes as agreed in paragraph 11 of the lease. The trial court found no violation of paragraph 11 as to taxes, but found that sewerage charges in the amount of $182.85 were due at the time the notice to vacate was served, so that there was a violation of a covenant of the lease entitling plaintiff to a judgment for possession. (The default was, in fact, for periods of time up to one year.) An order for summary judgment, made on July 21, 1960, was filed on August 2, 1960; and on August 8, 1960 the *227 judgment was stayed by a further county district court order pending this appeal. Thus, the defendant is still in possession.
We are not confronted with any contention that the Cumberland County District Court lacked jurisdiction to entertain a landlord-tenant dispossess action concerning these premises within its county. N.J.S. 2A:18-53 establishes that broad jurisdiction. Subdivision (c) (4) thereof permits removal of a tenant.
"Where such person * * * (4) shall commit any breach or violation of any of the covenants or agreements in the nature thereof contained in the lease for the premises where a right of re-entry is reserved in the lease for a violation of such covenants or agreements, and shall hold over and continue in possession of the demised premises or any part thereof, after the landlord or his agent for that purpose has caused a written notice of the termination of said tenancy to be served upon said tenant, and a demand that said tenant remove from said premises within 3 days from the service of such notice. The notice shall specify the cause of the termination of the tenancy, and shall be served either personally upon the tenant or such person in possession by giving him a copy thereof, or by leaving a copy thereof at his usual place of abode with some member of his family above the age of 14 years."

I.
Defendant first contends that the notice terminating his tenancy and demanding his removal was legally insufficient, in that it was "signed, not by the plaintiff but by one Sidney L. Brody." The notice was actually signed, as noted above: "By Sidney L. Brody, Sec. Vineland Shopping Center, Inc." We deem that signing to be sufficiently indicative of a notice from Vineland Shopping Center, Inc. We do not have here the technical question involved in Kean v. Davis, 21 N.J.L. 683 (E. & A. 1847), urged upon us by defendant, which involved the admissibility of parol evidence to clarify a doubt or ambiguity as to the signatory of a negotiable instrument. A requirement of "written notice" is generally held to be satisfied by a written, but unsigned notice, provided the circumstances are such that the receiver *228 can have no substantial doubt as to the source and purpose of the writing. 51 A.L.R.2d 1421; Marjer v. Layfmen, 140 N.J. Eq. 68 (Ch. 1947). N.J.S. 2A:18:53 specifies a "written notice," but does not specify that it must be "signed." Compare the requirements for a writing and signing under the Negotiable Instruments Law, R.S. 7:2-1, and under the statute of frauds R.S. 25:1-1 et seq. There is no question that, from the face of this notice, the tenant was adequately informed by its content and signature that it purported to be, and was in fact, a notice of the termination of his tenancy on behalf of the landlord. The signing by Brody as secretary of the corporate landlord is presumed to be by its authority, until the contrary appears. Brahn v. Jersey City Forge Co., 38 N.J.L. 74, 79 (Sup. Ct. 1875).

II.
Defendant next urges that the aforesaid notice was not properly served upon him, as required by N.J.S. 2A:18-53, supra. He made the same challenge as a second separate defense in his answer. At the trial, the court noticed the absence from the file of any affidavit verifying service of the notice. Upon oral representation of Thomas K.J. Tuso, one of plaintiff's attorneys, that he personally had served the defendant with a copy of the notice, the trial court granted a half-hour recess in the trial to allow Mr. Tuso to file the affidavit of service. This was done. The affidavit recited that, as authorized attorney and agent of plaintiff, he personally served a copy of the notice on the defendant on June 10, 1960, by handing the same to him personally at the demised premises.
Colloquy between the court and counsel elicited by way of elaboration from Mr. Tuso that he went to the store tenanted by defendant and asked a man therein behind a counter, "Are you Mr. DeMarco?" The man answered, "Yes." That man was defendant's father. Before Mr. Tuso could hand the notice across the counter to the father, the defendant son said, "It must be for me." When the defendant *229 took the notice and read it, he asked Mr. Tuso "What do I have to do with this?" The reply was, "You read it."
The trial court gave defendant's attorney an opportunity to comment on the allegations in the Tuso affidavit, a copy of which was served upon him. His reply was:
"I say there has been handed to me an affidavit. I have discussed the contents of the affidavit with my client and he advises me that the document in question was served upon his father at the store and not upon him personally; that at the time he was in the rear of the store and that he came up to the front of the store and that his father handed him the paper. I make this statement because it was so given to me."
When asked if he wanted to file an affidavit, to the effect that the notice was not personally in his hands on the 10th of June, at the hour specified, he stated:
"I do not wish to file any affidavit to that effect."
The defendant took the factual position that the notice was first handed to his father, who in turn handed it to him. From this, he argued that such service was not valid under the statute.
As the trial court properly observed, "There is no question about this service under the circumstances." In the absence of a controverting affidavit by defendant as to the mode of service and in the light of the colloquy between the court and counsel, evidencing submission of the facts by informal stipulation, the trial court was justified in its conclusion that the notice was validly served. Whether it was handed to the defendant personally, as Mr. Tuso's affidavit states, or received by the defendant personally from his father after Mr. Tuso handed it to the father, all three being present when he took it, the service was valid under N.J.S. 2A:18-53 (c) (4).
A party will not be heard to complain if the court grants summary judgment where he offers no opposing affidavits or matter in opposition, or only facts which are immaterial *230 or of an insubstantial nature. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954); Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 383 (App. Div. 1960).

III.
The defendant's final argument against the trial court's jurisdiction is his belated claim at the oral argument on appeal that a landlord-tenant relationship did not exist, or was not shown by the complaint to exist, between the plaintiff and defendant. He made no such claim before the trial court. He included no such point in his brief. However, we granted the parties permission to submit briefs as to this matter following oral argument, the point going to jurisdiction over subject matter. See Roberts Electric, Inc. v. Foundations & Excavations, Inc., 5 N.J. 426, 430 (1950). We note the following facts.
In this case the complaint shows that plaintiff became the owner of the subject premises on May 17, 1960; that on that date it became the assignee of the lease which defendant had with plaintiff's assignor; and that plaintiff became possessed of all the rights and obligations of its assignor, Seaboard Developers, Inc. It also refers to the written notice which plaintiff's assignor had given to defendant of the sale and assignment to it. Apparently, defendant paid his rent to Seaboard and thereby recognized this new ownership, as landlord. When Seaboard transferred title and assigned its rights under the lease to plaintiff on or about May 17, 1960, by which time the rent due on May 15, 1960 had been paid, plaintiff's inquiries disclosed the alleged breaches of covenant which it included in its three-day notice served on June 10, 1960 terminating defendant's tenancy. The defendant now argues that there was no landlord-tenant relationship between him and plaintiff, because he never recognized plaintiff as his landlord, and that the complaint is defective in failing to state facts sufficient to justify a conclusion of the existence of such a relationship.
*231 That same argument was made unsuccessfully by the tenant in Watson v. Idler, 54 N.J.L. 467 (Sup. Ct. 1892), in which it was held that an assignee of a landlord's reversionary interest could file an affidavit to dispossess a tenant in a summary proceeding taken under the then Landlord and Tenant Act. The plaintiff, through Seaboard, is a grantee and assignee of all the rights of the lessor in the leased premises. The court in the Watson case, at page 469, points out that "at common law, neither the assignee of the reversion nor the assignee of the rent separate from the reversion held, by favor of the assignment itself, any relation with the tenant." This was because of the feudal system, whereby the duty of a tenant to one superior could not be shifted, without his consent, to a stranger. "So, unless he attorned to or professed the new landlord, he owed him no duty." However, the reason for the rule having ceased to exist, "the rule was abolished by an act of parliament known as the `Statute 4 Anne, c. 16, § 19.'"
By another statute, 32 Henry VII, c. 341, the effect was that "privity of contract as well as of estate was transferred * * * the grantee of the reversion now stands in the same situation, and has the same remedies against the lessee, as the heirs at law of individuals, or successor in the case of corporations, had before the statute." Watson v. Idler, supra, at page 470.
These two statutes in modern form are now found in R.S. 46:3-8 and R.S. 46:8-2. R.S. 46:3-8 provides that every grant or conveyance of real estate or of the rent derived therefrom, or the reversion or remainder thereof, shall be good and effectual without the attornment of the tenant. R.S. 46:8-2 gives to the grantees or assignees of any real estate or of the reversions thereof from any person, and their assigns the right to enjoy the same advantages against the lessees by entry, and the benefit of all the covenants, conditions and agreements contained in their leases against the lessees which the lessors themselves might have enjoyed.
*232 In Weller v. Kelly, 136 N.J.L. 281 (Sup. Ct. 1947), while recognizing that a relation of landlord and tenant is a jurisdictional factual prerequisite to a summary dispossess action, the court noted at page 283:
"Attornment of the tenant is no longer necessary in the case of a conveyance of the landlord's reversionary interest in the demised lands. R.S. 46:3-8. This provision creates a privity of estate between the tenant and the assignee. Watson v. Idler, supra. See, also, R.S. 46:8-2. But it is essential that there be in the jurisdictional affidavit allegations of fact establishing the conveyance or attornment by the tenant; mere conclusions of law do not suffice."
See also 18 N.J. Practice Series (Fulop, District and Municipal Courts), 1954, § 1533, p. 95 (1954); N.J.S. 2A:18-51.
We are satisfied that by its complaint plaintiff alleged ownership and rights as assignee of the reversionary interest under the lease with defendant, sufficient to entitle it to bring a dispossess proceeding against the defendant tenant, even without any specific attornment to the plaintiff.
Defendant's supplemental brief after oral argument of the appeal refers to a number of older cases prior to our present practice. Therein stress was placed on the need for jurisdictional purposes of asserting with particularity in the initiatory dispossess affidavit the facts whereby plaintiff became owner of the reversionary interest. He argues that the complaint here did not specify the detailed facts by which plaintiff became the owner. While it is true that the complaint might have been more specific by detailed reference to the deed of conveyance and assignment of lease, there was enough to satisfy jurisdictional requirements. Our present practice aims at eliminating the delay and denial of justice by recourse to alleged technical insufficiencies in pleading. As stated in Abbott v. Beth Israel Cemetery Ass'n, 13 N.J. 528, 537 (1953).
"Jurisdiction over the subject matter does not depend upon the sufficiency of a complaint in a particular case, nor the technical manner in which the cause is pleaded. * * * It is the power of the court to hear and determine cases * * * to which the one to be adjudicated is relegated."
*233 So, too, in State v. Vreeland, 53 N.J. Super. 169, 173 (App. Div. 1958), this court said:
"Just as a court's jurisdiction over subject matter will not be defeated by the technical insufficiency of a complaint in pleading the facts which substantively operate to invoke that jurisdiction, * * *, so should it not be defeated by a technical insufficiency in pleading such a jurisdictional fact as is here involved where the record shows the fact exists. In the enlightened concepts which are entertained today in respect to the subordination of form to substance, the fact of jurisdiction should be controlling."
But defendant argues further that there was no proof of plaintiff's ownership at the trial, though he had put it in issue by his answer, when he pleaded that he had no knowledge thereof. At the trial level the defendant never suggested to the court the absence of formal proof of plaintiff's ownership of the property, or that he regarded this as an issue for determination. The trial judge had before him the complaint in which ownership was asserted and the affidavit of the secretary of the plaintiff corporation in which the plaintiff's ownership and the defendant's tenancy were inferentially expressed. Jurisdictionally, the hearing was limited by the implicit assent of the parties to the sufficiency of the signature on the written notice terminating the tenancy and the propriety of the service of that notice. While the issue of trial court jurisdiction may be noticed for the first time on appeal, it is quite another thing on appeal to challenge jurisdictional facts impliedly assented to at the trial. Stuart v. Wood, 86 N.J.L. 110 (Sup. Ct. 1914). As aptly stated in Ex-Cell-O Corp. v. Farmers Co-operative Dairies Ass'n, 28 N.J. Super. 159 (App. Div. 1953):
"There is a public concern in preventing an appeal, a not inexpensive matter, from becoming a vehicle, not for review of action taken below, but in reality for the continuance of the trial function."
The defendant does not assert that the plaintiff did not in fact own the subject property when it instituted the dispossess *234 proceedings. To remand this case to the trial court for formal proof of that which has already been conceded by plain implication and is not now contested would delay and deny justice to no good end.
We conclude that the Cumberland County District Court did have proper jurisdiction and therefore its judgment dispossessing the defendant is affirmed.