**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3467-18T1

THE CITY OF ORANGE
TOWNSHIP,

     Plaintiff-Appellant,

v.

MILLENNIUM HOMES AT
WASHINGTON AND DAY URBAN
RENEWAL ASSOCIATES, LP,
and 307 WASHINGTON STREET
URBAN RENEWAL ASSOCIATES,
LP,

     Defendants,

and

CENTRAL ORANGE VILLAGE II,
LLC,

     Defendant-Respondent.

_____

Argued October 8, 2019 – Decided November 1, 2019

Before Judges Yannotti, Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0137-19.

Thomas S. Dolan argued the cause for appellant (Murphy Partners LLP, attorneys; Thomas S. Dolan, on the brief).

William D. Wallach argued the cause for respondent (Mc Carter & English LLP, attorneys; William D. Wallach and Stephanie A. Pisko, on the brief).

PER CURIAM

Plaintiff City of Orange Township (City) appeals from a March 1, 2019 order staying the proceedings and compelling arbitration. Because the arbitration clause in the agreement in place between the City and defendant Central Orange Village II, LLC (Central) excluded from arbitration any dispute arising from Central's failure to pay any financial obligation, we reverse.[1]

I.

The motion record indicates the following. On July 21, 2011, the City and Central entered into a Financial Agreement. The Agreement includes an arbitration clause which states:

In the event of a breach of this Agreement by any of the parties hereto or a dispute arising between the parties

---

[1] The City does not challenge the order with respect to enforcement of the arbitration provisions as to co-defendants, Millennium Homes at Washington and Day Urban Renewal Associates, LP, and 307 Washington Street Urban Renewal Associates, LP.

in reference to the terms and provisions as set forth herein, other than a breach or dispute arising from the failure of the Entity to timely pay any portion of the Annual Service Charge or any other financial obligation required by this Agreement, then the parties shall submit the dispute to the American Arbitration Association in New Jersey . . . .

It is undisputed that Central paid the Annual Service Charge, thereby making this exception to arbitration inapplicable. However, in its complaint, the City alleges that Central failed "to pay past due land taxes for property [it] owned in Orange as required under law and the respective financial agreements entered into between the parties."

More specifically, the complaint seeks the following against Central: (1) a declaration that Central's failure to pay land taxes violates the New Jersey Constitution, the New Jersey Long Term Tax Exemption Law (LTTE Law), N.J.S.A. 40A:20-1, and New Jersey Housing and Mortgage Finance Law (HMFA Law), N.J.S.A. 55:14K-37; (2) a declaration that any provision of the LTTE Law or HMFA Law exempting land from taxation violates the New Jersey Constitution; (3) Central's failure to pay land taxes constitutes a material breach of the financial agreements entitling the City to terminate them; (4) damages arising out of breach of the respective financial agreements; and (5) damages for unpaid land taxes and interest.

A-3467-18T1

On August 1, 2012, a Central representative sent an email to the City "to confirm the following 3Q12 Land tax bills [for Central] are not to be paid and will be cancelled."  The email continued:

> Please note I have not received the following 3Q12 RE Tax bills for Central Orange Village II for the following properties which are included in this PILOT which should also be cancelled . . .  If you would please confirm these above 3Q12 bills are not to be paid and will be cancelled I would greatly appreciate it.

Within five minutes, the City copied Central on an internal email stating, "We issued PILOT bills for the referenced properties yesterday, please confirm to Joanne that the previous billings that were based on the assessed valuation will be cancelled.  Thanks!"  A confirming email was sent by the City to Central an hour later advising that a resolution to cancel its 2012 third and fourth quarterly taxes was being prepared and was anticipated to be approved at the first regular meeting of the Council in September.

On January 17, 2013, the City sent Central an email advising, "The Council approved all of the cancellation resolutions this past Tuesday . . . ."  Delinquent notices were thereafter sent to Central, and the City advised the notices were sent in "error" and should be disregarded.  Central was not billed for land taxes for the next five years.  But in 2018, the City took the position that Central in fact had to pay land taxes.

4

On January 9, 2019, Central filed a motion to stay the proceeding and compel arbitration based upon the parties' financial agreements. Central argued that the City's affirmative conduct created an equitable estoppel and waiver. Therefore, the City was prevented from challenging enforcement of the arbitration provision. The City opposed the motion arguing that: issues of statutory and constitutional interpretation could have statewide impact; Central's failure to pay land taxes and the City's right to collect them fell outside the parties' arbitration agreement; and requiring a municipality to arbitrate in order to collect taxes was contrary to public policy.

Following oral argument on March 1, 2019, the judge granted Central's motion. The judge found the parties were "sophisticated" and had equal bargaining positions when they entered into the arbitration agreements. He referred all parties and all issues to binding arbitration. The City appeals.

II.

We begin by reciting our standard of review. The interpretation of an arbitration agreement is a question of law; therefore, our review of an order granting a motion to compel arbitration is de novo. Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)); see Atalese v. U.S. Legal Servs. Grp., L.P., 219

N.J. 430, 445-46 (2014) ("Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation. Our approach in construing an arbitration provision of a contract is governed by the same de novo standard of review." (citations omitted)).

III.

The City challenges the judge's order requiring it to arbitrate with Central. The City does not dispute that "a valid agreement to arbitrate exists." Hirsch, 215 N.J. at 187. Thus, it was not a contract of adhesion, which "is presented on a take-it-or-leave-it basis, . . . without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." Estate of Anna Ruszala, ex rel. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super. 272, 294-95 (App. Div. 2010) (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'm, 127 N.J. 344, 353 (1992)). Indeed, the City is currently arbitrating disputes with co-defendants in this case.

Instead, the City contests whether the claims in its complaint against Central "fall within the clause's scope." Hirsch, 215 N.J. at 188. "A court must look to the language of the arbitration clause to establish its boundaries. Importantly, 'a court may not rewrite a contract to broaden the scope of

6

arbitration.'" Ibid. (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)).

At the same time, we must be mindful that arbitration "is a favored means of dispute resolution." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013) (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)), and that New Jersey courts have a "strong preference to enforce arbitration agreements . . . ." Hirsch, 215 N.J. at 186. "Because of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read liberally in favor of arbitration.'" Garfinkel, 168 N.J. at 132 (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)). "[U]nless the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, the matter is arbitrable[.]" Amalgamated Transit Union, Local 880 v. N.J. Transit Bus Operations, Inc., 200 N.J. 105, 125 (2009) (citations and quotation marks omitted).

The City claims that by agreeing to arbitrate "any other financial obligation required by this Agreement" it did not agree to waive its remedies to collect land taxes, including the right to relief under the In Rem Tax Foreclosure Act and/or to declare a default.

7

We are convinced that the arbitration clause here does not compel the parties to arbitrate the issue of whether Central is required to pay land or other taxes. Moreover, section 4.05 of the parties' Agreement unambiguously states relative to the issue of collecting land taxes: "the City shall have, among this remedy and other remedies, the right to proceed against the property pursuant to the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-1 et seq. and/or to declare a Default."

Further, the agreement's arbitration clause has a carve-out provision for "any other financial obligation required by this Agreement" and contains no limiting references or pertinent exceptions. Martindale v. Sandvik, Inc., 173 N.J. 76, 95-96 (2002). Accordingly, the City's claims fall outside the scope of the arbitration clause of their agreement.

We thus reverse the March 1, 2019 order staying the proceedings and compelling arbitration as to Central. Obviously, we do not express any view on the merits of Central's waiver argument. Instead, this opinion simply addresses where the parties' claims and defenses will be adjudicated.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3467-18T1